UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVOTECH (AUSTRALIA) PTY LIMITED, an Australian proprietary limited company,<br><br>            Plaintiff,<br><br>    v.<br><br>SURECLINICAL INC., a Nevada corporation,<br><br>            Defendant. | No.  2:22-cv-01259-JAM-AC<br><br>**ORDER GRANTING DEFENDANT SURECLINICAL INC.'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO STAY** |

The matter before the Court is SureClinical Inc.'s ("SureClinical") motions for preliminary injunction and to stay proceedings.  See Mot. for Preliminary Inj. and to Stay ("Mot."), ECF No. 13.  Novotech (Australia) Pty Limited ("Novotech") opposed the motions.  See Opp'n, ECF No. 15.  SureClinical replied.  See Reply, ECF No. 17.

For the reasons set forth below, the Court GRANTS SureClinical's motions.[1]

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g). The hearing was scheduled for November 1, 2022.

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

SureClinical licenses its copyrighted suite of cloud-based software applications to assist in the operation of clinical pharmaceutical trials and the management of their associated trial documents and data.  Mot. at 3.  SureClinical also provides consulting and engineering services to assist with configuration issues, which clients can purchase for an additional fee.  Id. SureClinical alleges that access to its software platform is based on a subscription fee and a user fee.  Id. at 4.  The subscription fee is based on: (1) the SureClinical Master Subscription Agreement ("MSA"); (2) SureClinical's Order Forms; and (3) the terms and conditions available on SureClinical's website.  Id.  Novotech is a clinical research organization, which facilitates and manages clinical trials for biotechnology, pharmaceutical, and research clients.  Opp'n at 4.  In 2014, SureClinical and Novotech entered into a contract where SureClinical agreed to license its software to Novotech for use in Novotech's clinical trials.  Mot. at 4-5; MSA, Exhibit 3 to Declaration of Rajiv Dharnidharka, ECF No. 13.  Novotech alleges that its access to SureClinical's platform was contingent upon payment of an annual fee and a monthly per-trial fee.  Opp'n at 5.  SureClinical alleges that Novotech contracted to use SureClinical's software solely for its internal use with a limited number of one hundred named users and that Novotech expressly turned down the right to use and distribute SureClinical's platform outside of Novotech with users not affiliated with Novotech.  Mot. at 5-6.  Novotech contends that the MSA permitted access for: (1) Novotech's employees, agents,

2

representatives, consultants, and independent contractors;
(2) Novotech's clients; (3) Novotech's clients' agents,
employees, representatives, consultants, and independent
contractors; (4) any other persons or entities Novotech bound to
the MSA; and (5) the agents, employees, representatives,
consultants, and independent contractors of those bound third
parties.  Opp'n at 4.

The MSA automatically renewed every year unless either party
gave notice of their intention to not renew; Novotech expressed
its intention to not renew the contract in February 2022 and to
export its trial data off of SureClinical's platform to a new
provider.  Id. at 4-5.  Under the MSA, the contract term is set
to expire on December 31, 2022.  Id. at 5.  SureClinical alleges
that in May 2022, upon conducting its first-ever analysis of its
customers' access records and license terms, SureClinical
discovered that Novotech had exceeded the limits of its license
by granting access to SureClinical's platform to over one
thousand external users, including multiple SureClinical
competitors.  Mot. at 8.  SureClinical communicated this alleged
breach of contract to Novotech and attempted to negotiate a
resolution.  Id. at 9.  After several months without a
resolution, SureClinical invoked its audit rights under the MSA
in an attempt to compel Novotech to disclose more information
about its documented use of SureClinical's platform to
SureClinical's auditor, Miller Kaplan.  Id.  SureClinical alleges
that Novotech has declined to comply with the audit and refuses
to do so unless ordered by the Court, instead choosing to carry
out these proceedings against SureClinical.  Id. at 9-12.

1  Novotech contends that SureClinical retaliated against it after

2  Novotech declined to renew the MSA by: (1) limiting Novotech's

3  ability to export clinical data off of SureClinical's platform;

4  (2) unilaterally modifying its use terms and license fee

5  structure to charge an additional monthly user fee for any user

6  who was not a Novotech employee; (3) accusing Novotech of

7  breaching the MSA and committing copyright infringement; and

8  (4) repeatedly threatening to terminate Novotech's access to the

9  platform unless it pays additional fees and submits to an audit.

10  Opp'n at 5-7.

11      On July 15, 2022, Novotech filed the operative complaint

12  against SureClinical, alleging breach of contract and seeking

13  declaratory relief from the Court regarding the parties'

14  respective rights and obligations under the MSA.  See Compl.,

15  ECF. No. 1.  SureClinical filed a first amended answer and

16  counterclaim alleging breach of contract and copyright

17  infringement and seeking declaratory relief on the disputed terms

18  of the MSA.  See First Amend. Answer and Counterclaim, ECF. No.

19  12.  SureClinical then filed these motions for preliminary

20  injunction and stay seeking to (1) compel Novotech to comply with

21  SureClinical's audit of its accounts and records relating to its

22  use of SureClinical's platform and any related follow-up requests

23  for information and (2) stay this action for sixty days from the

24  date of the Court's order, pending completion of the audit.  Mot.

25  at 1-2.  Novotech opposes the motions.  See Opp'n.  SureClinical

26  replied.  See Reply.

27  ///

28  ///

1                           II.   OPINION

2          A.   Legal Standard

3          A preliminary injunction is an "extraordinary remedy" that a

4     court may award only "upon a clear showing that the petitioner is

5     entitled to such relief."  Winter v. Natural Resources Defense

6     Council, Inc., 555 U.S. 7, 22 (2008).  To obtain a preliminary

7     injunction, a petitioner must demonstrate that: (1) they will

8     likely succeed on the merits, (2) they will suffer irreparable

9     harm in the absence of preliminary relief, (3) the balance of

10    equities tips in their favor, and (4) an injunction is in the

11    public interest.  Boardman v. Pacific Seafood Group, 822 F.3d

12    1011, 1020 (9th Cir. 2016) (quoting Winter, 555 U.S. at 20).

13         Post-Winter, the Ninth Circuit kept a "sliding scale

14    approach" to preliminary injunctions known as the "serious

15    questions test."  Alliance for the Wild Rockies v. Cottrell, 632

16    F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a

17    "likelihood" of success is not an absolute requirement.  Id. at

18    1132.  "Rather, serious questions going to the merits and a

19    hardship balance that tips sharply toward the [petitioner] can

20    support issuance of an injunction, assuming the other two

21    elements of the Winter test are also met."  Drakes Bay Oyster Co.

22    v. Jewell, 747 F.3d 1073, 1085 (9th Cir. 2014).

23         In assessing the propriety of a stay, the Court has "broad

24    discretion to stay proceedings as an incident to its power to

25    control its own docket."  Clinton v. Jones, 520 U.S. 681, 706

26    (1997).  The Court must consider several factors when deciding

27    whether to exercise that discretion to issue a stay: (1) the

28    "possible damage which might result from granting a stay,"

                                    5

(2) the "hardship or inequity which a party might suffer in being required to go forward," and (3) the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).

The proponent of a stay bears the burden of showing that these factors, on balance, warrant a stay. Clinton, 520 U.S. at 708. The moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility" that the stay will damage someone else. Landis v. N. Am. Co., 299 U.S. 248, 255 (1936).

B.   Analysis

1.   Motion for Preliminary Injunction

a.   Factor One: Success on the Merits

SureClinical argues that it has a strong likelihood of success on the merits for both its breach of contract and copyright infringement claim. As for the breach of contract claim, SureClinical argues that it is undisputed that (1) the MSA was a valid contract between the parties and (2) Novotech has expressly refused to comply with SureClinical's audit under Section 11.8 of the MSA. Mot. at 15. SureClinical contends that Novotech's alleged sublicensing of its access to external users and its refusal to comply with the audit constitute breaches, which have cost SureClinical millions of dollars in damages in unpaid, unauthorized user fees and exposure to competitors; SureClinical further notes that its ability to properly assess the extent of its damages has been impeded by Novotech's refusal

to comply with the audit.  Id.  As for the copyright infringement claim, SureClinical claims that is it undisputed that it has a valid copyright over its platform that has been in place for the entire duration of the MSA.  Id. at 16.  SureClinical contends that its copyrights were infringed by Novotech when Novotech sublicensed its access to SureClinical's platform to hundreds or thousands of unauthorized users, without SureClinical's express authorization; therefore, SureClinical has a claim under both direct and contributory copyright infringement.  Id. at 16-17.

Novotech responds that SureClinical is not likely to succeed on either claim.  Novotech argues that it has not breached the terms of the MSA by exceeding its license or refusing to comply with Miller Kaplan's audit because (1) the MSA does not give SureClinical the right to unilaterally select an auditor; (2) Miller Kaplan is not a neutral auditor; (3) the MSA makes no distinction between internal and external users; and (4) the one hundred user limit referred to in the applicable Order Form only applies to SureEsign, SureClinical's version of DocuSign that Novotech rarely used.  Opp'n at 12-13.  Novotech further notes that the parties have contracted under the MSA's terms for eight years during which SureClinical has allowed Novotech and its non-employee users, including auditors and regulators, to have access to its platform for an annual and monthly per-trial fee; it was not until Novotech communicated its decision to not renew the MSA, that SureClinical raised the issues at the center of this action.  Id. at 13.

The Court finds that SureClinical has demonstrated a likelihood of success on the merits of its breach of contract

claim.  A cause of action for breach of contract requires a showing of: (1) a contract; (2) performance by petitioner or excuse for non-performance; (3) breach; and (4) damage to petitioner from the breach.  Acoustics, Inc. v. Trepte Constr. Co., 14 Cal. App. 3d 887, 913 (Ct. App. 1971).  Damages can include lost prospective profits; when the fact of damages is certain, the amount does not need to be exact, particularly when the defendant's wrongful acts have created the difficulty in proving the exact amount of the damages.  Sargon Enterprises, Inc. v. Univ. of S. California, 55 Cal. 4th 747, 773–75 (2012).  A contract is to be interpreted solely from the written provisions of the contract, if possible.  Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 18 Cal. 4th 857, 868 (1998).  "If the contractual language is clear and explicit, it governs."  Id.  If an alleged ambiguity in the contract is not resolved by the language or context of the contract, the ambiguity is "generally construed against the party who caused the uncertainty to exist."  Id.  The contract at issue in this action, the MSA, governs the applicable duties of SureClinical and Novotech.  Under the plain terms of Section 11.8, SureClinical has the right to audit Novotech's records to ensure Novotech's compliance with the MSA's restrictions and Novotech is required to make requested records available for inspection by the auditor no later than ten days after receipt of SureClinical's audit notice.  MSA at 8.  Section 2.4 also has a catch-all provision that expressly reserves to SureClinical all rights not expressly granted by the MSA.  Id. at 3.  Given these provisions, the Court finds that SureClinical has demonstrated a likelihood of success on its claim that Novotech's

express refusal to comply with the Miller Kaplan audit constitutes a breach of Section 11.8 of the MSA.  Novotech's first argument that the MSA does not give SureClinical the unilateral right to select an auditor runs contrary to Section 2.4's catch-all provision, which reserves that right to SureClinical; Novotech's second argument against compliance due to Miller Kaplan's bias is not supported by the express terms of the MSA or any relevant legal authority.  The remaining elements of existence of a contract and performance under the MSA by SureClinical have not been contested by Novotech.  SureClinical has also sufficiently alleged damages from Novotech's breach in the form of lost profits from Novotech granting access to unauthorized users as well as Novotech's actions to impede SureClinical's full accounting of the alleged misconduct.  Thus, SureClinical has demonstrated a likelihood of success on the merits for its breach of contract claim.

b.   <u>Factor Two: Irreparable Harm</u>

SureClinical alleges that it has and will continue to suffer irreparable harm from Novotech's alleged conduct in the form of: (1) damage to its business model and goodwill due to its inability to control and monitor compliance with its software licenses; (2) an inability to quantify and address the total injury that SureClinical has suffered due to Novotech's alleged conduct; and (3) a risk that Novotech will erase evidence of its alleged misconduct.  Mot. at 17-18.

Novotech responds that SureClinical's purported harms are not irreparable, nor would they be addressed by the requested injunctive relief.  Opp'n at 17.  Novotech contends that

SureClinical's alleged inability to control and monitor
compliance is self-inflicted because Novotech remains open to
being audited by a neutral auditor agreed upon by both parties;
Novotech further notes that the information SureClinical seeks
can be obtained through the discovery process, making the relief
sought unnecessary.  Id.  Novotech argues that SureClinical fails
to cite to any relevant or persuasive legal authority to support
its second contention and notes again that discovery and expert
opinion testimony remain available if the audit does not occur.
Id. at 18.  As for the third claim of possible destruction of
material evidence, Novotech claims that SureClinical's concerns
are unfounded because Novotech agreed to honor SureClinical's
request for a litigation hold and does not intend to subject
itself to sanctions from the Court by destroying evidence.  Id.
at 19.  SureClinical also delayed seeking an injunction, which
undermines its argument that Novotech is imminently planning to
destroy evidence.  Id. at 20.

     The Court finds SureClinical's argument persuasive.  A
petitioner "may not obtain a preliminary injunction unless they
can show that irreparable harm is likely to result in the absence
of the injunction." Cottrell, 632 F. 3d at 1135.  "Indeed,
suffering irreparable harm prior to a determination of the merits
is perhaps the single most important prerequisite for the
issuance of a preliminary injunction."  See Nutrition
Distribution LLC v. Lecheek Nutrition Inc., No. CV 15-1322-MWF
(MRWx), 2015 WL 12659907 (C.D. Cal. June 5, 2015) (internal
citations omitted).  The Ninth Circuit has established that
irreparable harm can include damage to a company's brand,

reputation, or goodwill, particularly as they relate to standards of quality control and customer service; damage to one's competitive position and market share are also grounds for a finding of irreparable harm.  Apple Inc. v. Psystar Corp., 673 F. Supp. 2d 943, 948-49 (N.D. Cal. 2009), aff'd, 658 F.3d 1150 (9th Cir. 2011); see also Regents of Univ. of California v. Am. Broad. Companies, Inc., 747 F.2d 511, 520 (9th Cir. 1984).  SureClinical has sufficiently alleged both damage to its reputation and to its competitive position due to its ongoing inability to (1) monitor compliance with its license terms and (2) fully assess and control the allegedly unauthorized distribution of its product to non-paying users and potential competitors.  While the Court notes SureClinical's delay in pursuing injunctive relief, delay is not "particularly probative in the context of ongoing, worsening injuries" and is insufficient on its own to dismiss a claim of irreparable harm.  Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 866 (9th Cir. 2017).  Therefore, SureClinical has demonstrated irreparable harm absent an injunction.

c.   Factor Three: Balance of the Equities

SureClinical contends that the balance of equities tips sharply in its favor because the requested audit is something that was contractually agreed to by the parties.  Mot. at 21. SureClinical states that Novotech will not be adversely impacted by complying with the Miller Kaplan audit because SureClinical is paying for the audit and Novotech remains free to challenge its conclusions.  Id. at 22.  SureClinical claims that denial of the injunction would nullify the only contractual mechanism that SureClinical has to ensure compliance and would reward Novotech

1    for its alleged breach and misconduct. <u>Id.</u>

2       Novotech responds that SureClinical faces no hardships

3    because Novotech remains open to an audit by an auditor jointly

4    selected by the parties.  Opp'n at 21.  Novotech again asserts

5    that SureClinical can obtain its requested information from the

6    discovery process and that this motion for a preliminary

7    injunction is simply a way for SureClinical to gain a tactical

8    advantage in the underlying litigation. <u>Id.</u>  By granting the

9    injunction, the Court would be modifying Section 11.8 of the MSA

10   to favor SureClinical's interpretation of its audit rights. <u>Id.</u>

11       The Court finds that the balance of equities weighs in favor

12   of SureClinical.  A court must "balance the interests of all

13   parties and weigh the damage to each" in determining the balance

14   of the equities. <u>CTIA-The Wireless Ass'n v. City of Berkeley,</u>

15   <u>California</u>, 928 F.3d 832, 852 (9th Cir. 2019) (citing <u>Stormans,</u>

16   <u>Inc. v. Selecky</u>, 586 F.3d 1109, 1138 (9th Cir. 2009)).

17   SureClinical's right to audit Novotech is a clear, express

18   provision of the MSA agreed to by both parties; Novotech fails to

19   identify a provision in the MSA that allows it to object to an

20   audit on bias grounds.  The audit provision demonstrates

21   SureClinical's interest in ensuring compliance with its license

22   provision and comes at no cost to Novotech if Novotech is

23   complying.  Novotech's claim that SureClinical can obtain its

24   requested information from the discovery process does not excuse

25   its contractual duties under the MSA and its claim that

26   SureClinical seeks to gain a tactical advantage in the underlying

27   litigation is unsupported by the facts.

28   ///

1          d.   Factor Four: Public Interest

2          SureClinical argues that the injunction is in the public

3    interest because the audit provision was intended to ensure that

4    SureClinical can protect its copyrighted material.  Mot. at 22.

5    Novotech responds that SureClinical fails to support its argument

6    with persuasive legal authority and that the public interest

7    would not be served by allowing SureClinical to purportedly

8    circumvent the limitations of discovery with its biased audit.

9    Opp'n at 21-22.  Considering the Court's disposition on the other

10   Winter factors, it is not swayed one way or the other regarding

11   the public interest.  The issues raised by the parties under this

12   factor are not dispositive in this case.

13                     e.   Bond

14         SureClinical also argues that the Court should not require a

15   bond because Novotech has not put forth evidence that it would

16   suffer damages by issuance of the injunction.  Mot. at 23.

17   Novotech has not requested a bond, and the Court does not require

18   a bond for this injunction.

19              2.   Motion to Stay

20         SureClinical moves for the Court to stay proceedings for

21   sixty days pending the conclusion of the Miller Kaplan audit.

22   Mot. at 23.  SureClinical states that the case is still in its

23   early stages; the parties have yet to meet and confer and there

24   is no trial date set.  Id. at 24.  SureClinical claims that an

25   audit would help simplify the issues in the underlying action by

26   (1) allowing SureClinical to know the full scope of Novotech's

27   use of SureClinical's platform, (2) proving Novotech an

28   opportunity to explain the manner of its use of SureClinical's

platform, and (3) potentially remove the need for discovery on those issues.  Id.  SureClinical contends that granting a stay will not result in prejudice or undue tactical advantage because the requested information was due ten business days after SureClinical's audit notice pursuant to the MSA's terms and denying a stay could result in Novotech continuing its delay tactics through litigation.  Id. at 25.  SureClinical also argues that granting the stay would conserve judicial and party resources and time that would otherwise be spent on duplicative discovery efforts.  Id. at 25.

Novotech contends that a stay would result in great damage to Novotech in the form of loss of access to SureClinical's platform on November 3, 2022, absent a favorable ruling on Novotech's injunction.  Opp'n at 23.  Novotech claims that SureClinical will not suffer harm if the stay is denied because SureClinical still has the opportunity to engage in discovery and litigation.  Id.  Novotech argues that the audit will not impact any issues central to the underlying litigation because the audit's conclusions are not binding and can be challenged.  Id. at 23-24.

The Court finds SureClinical's argument persuasive.  The Court has "broad discretion to stay proceedings."  Clinton, 520 U.S. at 706.  The Court must consider several factors when deciding whether to exercise that discretion to issue a stay, namely: (1) possible damage resulting from the stay; (2) hardships or inequities to parties affected by the stay; and (3) whether particular issues will be simplified or complicated by the stay.  Hall, 300 F.2d at 268.  The Court finds that these

factors weigh in SureClinical's favor.  The possible damage
alleged by Novotech is speculative and can be addressed by its
own pending motion for a preliminary injunction to enjoin
SureClinical from cutting off its access to its platform.
Neither party faces a material hardship or inequity by the
issuance of the stay.  To the contrary, granting the stay to
allow time for the audit will allow the parties to fully abide by
the terms of the MSA's audit provision.  It will also allow the
parties and the Court to gain more clarity on the extent of
Novotech's use of SureClinical's licenses, simplifying a material
issue in the underlying litigation.

III.   ORDER

For the reasons set forth above, the Court GRANTS
SureClinical's motion for preliminary injunction and GRANTS
SureClinical's motion to stay proceedings for sixty days from the
date of this order.

IT IS SO ORDERED.

Dated: December 2, 2022

JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE